**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WARD CONNER,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-07-BE-1095-S** |
| | ] | |
| **LAFARGE NORTH AMERICA, INC.,** | ] | |
| | ] | |
| **Defendant.** | ] | |

**MEMORANDUM OPINION**

This case comes before the court on "Defendant's Motion for Summary Judgment" (doc. 19). The parties have fully briefed the motion. Plaintiff Ward Conner, an African-American, asserts that Defendant Lafarge Building Materials, Inc., violated his rights under Title VII and 42 U.S.C. § 1981 by promoting a Caucasian employee to the Packhouse Supervisor position instead of him. For the reasons stated below, the Defendant's motion for summary judgment (doc. 19) will be GRANTED. A separate order to that effect will be entered simultaneously.

**FACTS**

In 2001, Defendant Lafarge Building Materials, Inc., purchased the assets of Blue Circle, Inc., a cement manufacturer that operated a plant located in Calera, Alabama (the Roberta Plant). Blue Circle maintained an anti-discrimination and anti-harassment policy, a copy of which was given to Mr. Conner, while it operated the plant. After LaFarge began operating the Roberta Plant, it issued an anti-discrimination and anti-harassment policy, and Plaintiff Ward Conner received a copy of that policy as well.

Mr. Conner, an African-American, has worked as a grinder, concrete finisher, feed-in

1

operator, and leadman of a labor crew for several different companies since his graduation from high school in 1979. Mr. Conner originally worked for Blue Circle as a laborer, and his primary job function was cleaning up the plant. Mr. Conner then began working in Blue Circle's Packhouse department, where he was responsible for packaging, storing, and shipping cement to Blue Circle's customers.

After LaFarge took over operation of the Roberta Plant, employees working in the Packhouse were cross-trained on all jobs in the Packhouse.  This cross-training involved the loading of the bulk trucks and rail cars, overseeing the operations of the bulk trucks and rail cars, packing product, and operating forklifts and palletizers for storage of product.

Rick Buffkin, a Caucasian, held one of the two Packhouse Supervisor positions and was a member of the interviewing panel for the second Packhouse Supervisor position. Mr. Conner asserts that Buffkin is racially prejudiced against African Americans, because Buffkin disciplined only African-Americans, treated Mr. Conner and other African Amercians differently than their Caucasian co-workers, and referred to African Americans using racially derogatory slurs. Buffkin admits that he was accused of racially preferential treatment in 1994, after he first began working at the Roberta plant. Two African American members of the labor crew at that time complained that Buffkin was being too hard on them because of their race. Buffkin also admits to one other specific complaint by an African American in 2000, and also that he received other complaints throughout the years from Caucasian and African American employees who thought he was being too hard on them. Buffkin denies that he ever disciplined or spoke down to an employee because of his or her race.

In April 2006, LaFarge posted the availability of the other Packhouse Supervisor position

(the one not held by Buffkin) and began seeking internal and external candidates for the other Packhouse Supervisor position. The posting detailed the qualifications for and responsibilities of the position. Four internal and fourteen external candidates applied for the Packhouse Supervisor position.  Lafarge determined that the position could be filled internally and interviewed only the internal candidates, including Mr. Conner.

A selection panel interviewed Mr. Conner in June 2006. During his interview, the panel asked him about how he would handle disciplining employees and other hypotheticals relating to Mr. Conner's managerial skills. Mr. Conner told the panel he would be comfortable disciplining co-workers, by talking with anyone with a bad attitude and resolving issues with communication. Based on the Mr. Conner's responses to hypothetical situations, the panel determined that Mr. Conner would not be comfortable disciplining employees, had no familiarity with computer programs such as Word and Excel, and lacked an awareness of safety that a Packhouse Supervisor would need.

The panel also utilized a candidate matrix to help select a candidate for the position. The matrix compiled each interviewer's scores of the candidates in various categories. The scores were weighted based upon each category's relative importance. The categories included attitude, safety, leadership, communication, decision making, computer skills, experience, and equipment skills.  The categories of attitude, safety, leadership, decision making, and computer skills were weighted most heavily, due to the importance of those skills for the Packhouse Supervisor position. Mr. Conner's scores ranked third among all the candidates in his matrix-calculated scores.

The panel ultimately chose Stephen Clements, a Caucasian, to fill the Packhouse

Supervisor position. Mr. Conner filed suit in this court alleging that Lafarge intentionally discriminated against him on the basis of his race by not selecting him for the Packhouse Supervisor position.  Mr. Conner asserts that Lafarge's alleged discrimination amounts to a violation of his rights under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. Lafarge moved for summary judgment, and the parties have fully briefed the motion.

**STANDARD OF REVIEW**

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.*

Once the moving party meets its burden of showing the district court that no genuine

4

issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)   In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.").  The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party.  *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  The court must refrain from weighing the evidence and making credibility

determinations, because these decisions fall to the province of the jury.  *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Graham*, 193 F.3d at 1282.  The non-moving party "need not be given the benefit of every inference but only of every reasonable inference."  *Id.*  The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.  After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

### DISCUSSION

Mr. Conner asserts that Lafarge failed to promote him because of his race, in violation of his rights under Title VII and 42 U.S.C. § 1981. Specifically, Mr. Conner asserts that he applied for the Packhouse Supervisor position, but that Lafarge chose not to promote Mr. Conner because he is African-American.  Mr. Conner further asserts that he has been treated differently than the Caucasian employee who did get the promotion to Packhouse Supervisor. Lafarge asserts that Mr. Conner was not promoted because the hiring committee found him to be less qualified than two other candidates for the position. The parties do not dispute the basic facts; the court, therefore, determines that no genuine issues of material fact remain.  The only remaining inquiry, then, is whether Lafarge is entitled to judgment as a matter of law based on those facts.

The court analyzes claims of race discrimination under § 1981 in the same manner as claims brought under Title VII.  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir.

1998). One way to establish a claim of racial discrimination is through direct evidence. *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997). If the plaintiff cannot prove discrimination by direct evidence, as in this case, the plaintiff must establish his prima facie case through the burden shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Nevertheless, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 251-52 (1981).

Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." 411 U.S. at 802. A plaintiff can establish a prima facie case of racial discrimination based on disparate treatment by showing that he belongs to a racial minority, he experienced an adverse job action, his employer treated similarly situated employees outside his classification more favorably, and he was qualified to do the job. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). Lafarge does not dispute that Mr. Conner has satisfied his initial burden of establishing a prima facie case of racial discrimination. (Dft.'s Br. 17).

Once the plaintiff establishes his prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. Lafarge asserts that it chose not to select Mr. Conner for the Packhouse Supervisor position because he performed poorly in his job interview. The Eleventh Circuit has held that "poor interview performance [] can be as legitimate as any other reason." *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1105 (11th Cir. 2001). Poor interview performance is a "legitimate nondiscriminatory reason if the defendant articulates a clear and

7

reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981)).

Lafarge asserts that the interviewers gave Mr. Conner lower scores, because he did not exhibit an ability to discipline co-workers or an appreciation for necessary safety precautions, and because he lacked proficiency in computer skills. The Eleventh Circuit has determined that an interviewer's conclusion that a candidate was not the best suited for the position was supported by a "reasonably specific factual basis," because the interviewer noted that the candidate provided inarticulate answers and was unable to communicate his answers concisely as the job would require. *Chapman*, 229 F.3d at 1034-35. The Eleventh Circuit has also determined that an interviewer's statement that the candidate did not interview as well as expected and did not answer the questions asked provided a "reasonably specific factual basis" upon which the interviewer could base his subjective conclusion that the candidate was not the best for the job. *Bass*, 256 F.3d at 1106. Similarly, in this case, the interviewers have stated that Mr. Conner was uncomfortable disciplining co-workers, had trouble identifying "red flag" safety issues and ways to troubleshoot them, and lacked the requisite computer skills. Based on those reasons, Mr. Conner received relatively low scores in the categories of leadership, decisionmaking, and computer experience. These low scores resulted in Mr. Conner being ranked third out of the four candidates who applied for the Packhouse Supervisor position. The court finds that Lafarge has carried its burden to show legitimate, nondiscriminatory reasons, based upon sufficiently specific facts, for not selecting Mr. Conner for the position.

Once the employer shows a legitimate, nondiscriminatory reason for its decision, the

employee must "be afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804.  To survive summary judgment, the employee must show "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper*, 390 F.3d at 725.

Despite Mr. Conner's contention, "[i]n the context of a promotion '[a] plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted.'" *Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). "[A] plaintiff must show that the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Springer*, 509 F.3d at 1349 (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004)).

Mr. Conner argues that the disparities in qualifications are of such significance as to amount to pretext under the Eleventh Circuit's *Cooper* test. Mr. Conner argues that he had the minimum two years of experience, as listed under the qualifications section of the Packhouse Supervisor job posting, while Walker, who was promoted to the position, did not. Mr. Conner also asserts that he had good performance evaluations, that he had trained Walker on the plant software and equipment, and that Walker did not have the requisite supervisory experience. Lafarge asserts that performance evaluations are irrelevant, because the interviewing panel did not consider them in making a hiring decision. Lafarge also asserts that, though he has

experience, in his interview Mr. Conner did not display strong computer skills, effective disciplinary methods, nor an attention to safety precautions. Furthermore, Lafarge asserts that the interviewing panel chose Walker, despite his minimal experience in the Packhouse, because he displayed proficiency in computer skills, an ability to effectively discipline co-workers, the drive and adaptability necessary for supervising, and the ability to spot and troubleshoot problems in the Packhouse. The court determines that the disparities in qualifications are not "of such weight and significance" that no reasonable, impartial person could have chosen Walker over Mr. Conner. *See Cooper*, 390 F.3d at 732.

Alternatively, Mr. Conner argues that these factors support an inference of discrimination. "[W]here the qualifications disparity is not the *sole* basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 772 (11th Cir. 2005) (emphasis in original) (citing *Bass*, 256 F.3d at 1107 ("Hiring a less qualified person can support an inference of discriminatory motivation.")). Mr. Conner asserts that the alleged discriminatory statements and actions of Buffkin, the other Packhouse Supervisor, coupled with the hiring of less experienced Caucasian supports an inference of pretext.

In *Vessels*, the Eleventh Circuit noted that the employer desired a candidate with a state leadership certification and a doctoral degree.  408 F.3d at 772. One of the decisionmakers in that case had also allegedly expressed a desire to hire an African-American for the position, because the position would be in a predominately African-American school. *Id.* The employer ultimately hired an African American, who had neither the state leadership certification nor a doctoral degree, over a Caucasian, who had both the certification and doctoral degree in the relevant field.

10

*Id.* The Eleventh Circuit ultimately determined that the plaintiff could not establish pretext under the *Cooper* test, which requires that the disparity in qualifications be "of such weight and significance" that no reasonable, impartial person could have chosen the selected candidate over the plaintiff.  The Eleventh Circuit, however, did find that the decisionmaker's expressed racial biases together with the superiority of the plaintiff's qualifications and the employer's disregard for its own procedures in hiring and promoting the selected candidate supported an inference of discrimination.  *Id.*; *see also Drakeford v. Ala. Co-op Extension Sys.*, 416 F. Supp. 2d 1286, 1304 (M.D. Ala. 2006) (discussing the *Vessels* factors to be weighed when determining whether to draw an inference of discrimination: break in hiring or promotion procedure, racially tinged statements of the decisionmakers, and clear disparity in qualifications).

In this case, Mr. Conner asserts that Buffkin's alleged racial biases, along with Walker's lack of supervisory experience, support an inference of discrimination. Mr. Conner asserts that Buffkin used racial slurs and disciplined only the African American packhouse workers.  Buffkin admits that he has been accused of racially preferential disciplining by both African Americans and Caucasians, but he denies any such differential treatment.  The specifically noted prior accusations of racially preferential treatment occurred in 1994 and 2000, years before Mr. Conner applied for the supervisor position at issue here. Mere allegations without more establish nothing. Furthermore, the complaints against Buffkin since that time have been from both Caucasians and African Americans.

The court  finds that Buffkin's alleged racial biases against African Americans, even if true, do not bear on the Packhouse Supervisor hiring decision. In *Vessels*, unlike in this case, a decisionmaker specifically stated that the company was seeking an African-American for the

position, because the position would be in a predominately African-American school. 408 F.3d at

772.  The court finds that the alleged racial biases of Buffkin in this case do not amount to

discriminatory animus in the hiring decision, as did the explicitly racially preferential statement

in *Vessels*.

     The court also finds that the differences in qualifications here are not as stark as in the

*Vessels* case, where the candidate selected was not state certified and did not hold a doctoral

degree.  Here, Mr. Conner has more experience working in the Packhouse than Walker, but the

interviewers determined Mr. Conner lacked the requisite computer skills, the attention to safety,

and the ability to effectively discipline his coworkers. In contrast, Walker had only eight months

of experience in the Packhouse, but the interviewers determined his aptitudes in discipline,

computer abilities, and safety awareness made him a better candidate overall for the supervisor

position. As the Eleventh Circuit has noted, federal courts "do not sit as a super-personnel

department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939

F.2d 1466, 1470 (11th Cir. 1991).  The court, therefore, concludes that Mr. Conner has not

proffered evidence sufficient to support an inference of discrimination.

     Mr. Conner also argues that the interviewers chose to weight their rankings of the

candidates in such a discriminatory way as to keep Mr. Conner from receiving the position. "It is

not the Court's place to question the wisdom of the panel members who scored an applicant with

less experience higher than an applicant with more experience." *Robinson v. Orange County,

Fla.*, No. 6:05-CV-717-ORL-31DAB, 2006 WL 1678967, at *31 n.33 (M.D. Fla. June 16, 2008);

*see also Elrod*, 939 F.2d at 1470. The court notes, however, that even absent the category

weighting, Mr. Conner's raw scores were not the top scores. The court further notes that even

12

borrowing the category weighting from the Quarry Supervisor matrix, from which the interviewers for the Packhouse Supervisor position borrowed their category list, Mr. Conner's weighted scores still would not be the top scores. The court determines that Lafarge's weighting of the different categories considered in making the hiring decision does not reflect any discriminatory animus.

Because Mr. Conner has not carried his burden under *McDonnell Douglas*, the court finds that Lafarge is entitled to judgment as a matter of law. Accordingly, the court grants summary judgment in favor of Lafarge.

## CONCLUSION

For the reasons stated above, the court concludes that it must GRANT Lafarge's motion for summary judgment, because Mr. Conner failed to show that Lafarge's proffered nondiscriminatory reason was pretextual. A separate order to that effect will be entered simultaneously.

DATED this 20th day of November, 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

13